| | | |
|---|---|---|
| **EDWARD WILLIAMS,** On Behalf of Himself and All Others Similarly Situated, | : | |
| | : | |
| | : | |
| **AND** | : | **Case No.: 1:17-cv-101** |
| | : | |
| **ANTHONY CASEY**, On Behalf of Himself and All Others Similarly Situated, | : | **Judge:** |
| | : | |
| | : | |
| **PLAINTIFFS,** | : | |
| v. | : | **CLASS AND COLLECTIVE ACTION** |
| | : | **COMPLAINT AND JURY DEMAND** |
| **WINTON TRANSPORTATION, INC. D/B/A UNIVERSAL TRANSPORTATION SYSTEMS, LLC,** | : | |
| | : | |
| | : | |
| **DEFENDANT.** | : | |

## COMPLAINT

Plaintiffs, Edward Williams and Anthony Casey, on behalf of themselves and all others similarly situated and through their undersigned counsel, allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action against Winton Transportation, Inc., doing business as Universal Transportation Systems, LLC ("Universal"), acting by and through its managers and other agents or employees, including its owner and President Carolyn Burer, for engaging in a systematic scheme of wage abuses against its hourly paid employees in Ohio.  This scheme involves, among other things, failing to appropriately calculate employees' compensable time and refusing to pay employees for regular and overtime hours they worked.

2.     As a result of Universal's systematic, clandestine, and opaque system of calculating the hours each employee worked, Universal has violated federal and Ohio law.

## JURSIDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this is an action arising under the laws of the United States, specifically the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

4.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy.

5.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) because Universal resides within this judicial district and a substantial part of the events giving rise to this Complaint occurred in this district.

## PARTIES

6.     Plaintiff Edward Williams is a resident and citizen of Hamilton County, Ohio. Mr. Williams is a driver currently employed by Universal.  Mr. Williams frequently works in excess of 50 to 60 hours a week.  However, Mr. Williams is not appropriately compensated for all time worked, because Universal does not calculate Mr. Williams' compensable time in accordance with the law.

7.     Plaintiff Anthony Casey is a resident and citizen of Clermont County, Ohio. Mr. Casey is a driver currently employed by Universal.  Mr. Casey frequently works in excess of 50 to 60 hours a week.  However, Mr. Casey is not appropriately compensated for all time worked, because Universal does not calculate Mr. Casey's compensable time in accordance with the law.

8.     Universal is an Ohio corporation with its principal place of business in Butler County, Ohio.  Universal maintains its headquarters in Fairfield, Ohio.

9.      Universal is and has been at all relevant times an "employer" within the meaning of the FLSA and Ohio law.  *See e.g.,* 29 U.S.C. § 203(d); O.R.C. § 4111.03(D)(2).

10.      Plaintiffs and all other similarly situated persons are and were, at all relevant times, employees of Universal as defined by the FLSA and Ohio law.  *See e.g.,* 29 U.S.C. § 203(e)(1); O.R.C. 4111.03(D)(3).

11.      Pursuant to 29 U.S.C. § 216(b), Plaintiffs Williams and Casey hereby give their written consent to be parties to this action.  *See* Exhibit A.

## BACKGROUND

12.      Universal provides transportation services to adults and children, transporting an average of 2,200 clients per day according to their website.  Universal employs a large amount of drivers, including Plaintiffs, to transport this amount of clients per day.  Universal's website states that it currently employs over 250 drivers.

13.      The main function of a Universal driver's employment is to transport clients to and from clients' residences, places of medical treatment, schools, and other locations.

14.      Universal directs every aspect of the client's transportation, leaving little discretion to the driver actually transporting the client.  Universal schedules and controls the starting and ending destinations of each trip, along with the start and end time of each trip.

15.      Drivers are required to complete significant training as a condition of employment.  They must pass an Ohio Department of Transportation physical, along with annual follow-up physicals, and must complete driver and company training programs.  Many drivers must also complete first aid and cardiopulmonary resuscitation training as a condition of employment.

16.     Universal's drivers typically drive one of many types of vehicles, depending on the type of clientele they transport.  Universal provides these vehicles to its drivers and ultimately owns, maintains, and repairs the vehicles.  Because most drivers only transport a few clients at a time, Universal usually provides the drivers with small vehicles such as a Toyota Prius, Dodge Caravan, or vehicles fitted with wheelchair lifts.

17.     Drivers are not allowed to use Universal vehicles before and after their scheduled shifts.  During their shifts, drivers cannot use Universal vehicles for personal purposes unless they request and receive Universal's permission to do so.  Further, they must receive Universal's permission to pick up anybody not previously authorized by Universal to be in the vehicle, such as their spouse, friend, or child.

18.     Drivers must transport only those people approved and scheduled by Universal.  Drivers cannot transport members of the general public.  Individuals who want to utilize Universal's transportation services must first contact Universal itself, not an individual driver, and often cannot be transported for at least one to two days.  This is particularly true for those individuals who need non-emergency medical transportation.

19.     Drivers usually only travel within Ohio to perform their job duties.  Those drivers that do travel to another state do so rarely, indicating that interstate travel is an extremely minor portion of their job responsibilities.  If a driver is required to travel out of state, that travel is directed by Universal, not the driver themselves.

20.     Universal is registered with the Federal Motor Carrier Safety Administration.  Universal classified its operations as "Intrastate" in this registration and also noted that it was an "Intrastate Only (Non-HM)" carrier.  (Federal Motor Carrier Safety Administration Company Snapshot, https://safer.fmcsa.dot.gov/ (click on "company snapshot" on home page, search by

USDOT number "2124512") (last visited Jan. 12, 2017)). An "Intrastate Only (Non-HM)"

carrier transports "passengers or property entirely within one State," and this transportation "is

not part of a through movement that originates or terminates in another State or country."

(Federal Motor Carrier Safety Administration, Unified Registration System (URS) Glossary of

Terms, https://www.fmcsa.dot.gov/registration/urs-glossary-of-terms (last visited Jan. 12,

2017)).

      21.    Carolyn Burer is the owner and President of Universal. Ms. Burer is

integrally involved in the operations of Universal, including the calculation of drivers'

compensable time and pay.

## A UNIVERSAL DRIVER'S WORKDAY

      22.    Universal's drivers begin their workday with a pre-trip inspection of the

Universal vehicle they will drive that day. Importantly, this inspection is usually completed at a

driver's home, because Universal typically requires its drivers to store the vehicles they drive at

their home. Accordingly, drivers generally do not begin their workday at an independent

location.

      23.    Drivers must complete a daily checklist, provided by Universal, indicating

that they reviewed certain portions of the Universal vehicle during this pre-trip inspection.

During this inspection, drivers must review, among other things, the exterior of the vehicle,

multiple engine components, emergency equipment stored in the vehicle, the vehicle's lights, the

vehicle's interior, and, if applicable, the vehicle's wheelchair ramp. This inspection typically

takes about fifteen minutes to complete.

      24.    After this pre-trip inspection is completed, drivers follow the schedule set out

for them by Universal in that day's manifest. The manifest serves as a driver's initial schedule

for the workday. It details the estimated time a driver should leave their home; the name, address, and contact information of every client the driver is supposed to pick up during the day; the drop off location for each client; the estimated start and end times for each trip; and the estimated time when the Driver should conclude the workday. The manifest is created wholly by Universal without the input of the drivers and is generally provided to drivers the night before their next workday.[1] Drivers can print the manifest at home or pick up a copy of the manifest at Universal's offices.

25. Drivers are not allowed to alter the schedule reflected on the manifest without Universal's permission. For example, if a driver notices that a client has a doctor appointment scheduled to start before the client is scheduled to be picked up, the driver cannot unilaterally adjust their schedule to pick up the client earlier. The driver must receive Universal's approval to deviate from the schedule listed on the manifest.

26. Universal requires drivers to fill out certain portions of the manifest after every trip. As drivers complete their scheduled pickups and drop offs throughout the day, they must note the actual time they pick up and drop off a client, and the mileage reflected in the Universal vehicle's odometer at each stop.

27. Additionally, drivers are required to obtain a client's signature at the start of each trip, or explain why this signature could not be obtained. If drivers do not obtain this signature, Universal may not compensate the driver for that trip.

28. Universal requires drivers to turn in completed manifests at the end of each work week. Drivers are also required to complete and submit a time sheet each week, which documents the start and end time of each day.

---

[1] Manifests for workdays occurring on a Saturday or Sunday are provided to drivers on the preceding Friday.

29.     While it is Universal's responsibility to accurately calculate the actual hours worked by each of its drivers, upon information and belief, Universal compensates its drivers based on Universal's time estimates, rather than the actual time logged on a driver's manifests and timesheets.  For example, if Universal believes a trip will end at 11:30 AM, but in reality the trip ends at 11:40 AM according to a driver's time entry, Universal does not compensate the driver for that 10 minute difference.

30.     Accordingly, if a driver's trip takes longer then estimated because of e.g., traffic, a client running late, or because of vehicle maintenance issues, the driver is not compensated for that time.

31.     In addition to these issues, Universal refuses to compensate employees for purported "down time."

32.     Upon information and belief, Universal defines "down time" as the period of time when a driver is **not**: (1) traveling to a client pick up location; (2) transporting a client; (3) traveling to or from Universal offices; or, (4) driving home for the day.

33.     While Universal has not clearly articulated every parameter of its down time policy to its drivers, Universal calculates purported down time through a uniform policy that applies to each driver.

34.     This is problematic because, among other reasons, substantial amounts of down time can occur each day given the nature of Universal's business.  For example, clients may cancel trips, a driver may get to a pick up location earlier than expected, it may take time for a client to disembark from the vehicle, or Universal may schedule a large gap of time between a driver's scheduled pickups and drop offs.

35.     Further, this policy fails to account for whether a driver is working for the benefit of Universal during this "down time."  A driver's job responsibilities often require them to work for the benefit of Universal even when a client is not in the vehicle.

36.     For example, drivers must ensure that the vehicles they are driving are appropriately fueled, yet Universal's policy prevents its drivers from stopping at gas stations while a client is in the vehicle.  Therefore, drivers must obtain gas in the "down time" between client trips.  Furthermore, Universal has a contract with Speedway LLC for the fueling of its vehicles.  This contract requires drivers to get gas at only approximately thirty to forty Speedway gas stations located in southern Ohio.  These gas stations are spread throughout the region and are often a significant distance from a driver's route.  This means a driver often has to travel a significant distance to get to one of these select locations, fuel the Universal vehicle, and travel a significant distance to the next client pick up location in between client trips.  However, because a client is not in the Universal vehicle during these activities, drivers are not compensated for all of this time despite that fact that obtaining fuel is an integral and indispensable part of their principal work activities.

37.     Windows of purported down time are also often too small for a driver to use for their own purposes.  Further, drivers have to obtain Universal's express permission to use any down time for personal purposes.

38.     Drivers are also not completely relieved from work responsibilities during any window of purported down time because they are required to remain "on call" during these periods.  Universal can add new pickups and drop offs to its drivers' workdays during any purported down time.  These unpredictable assignments come so frequently that drivers must keep their phone and/or their work tablet—both of which are provided by Universal—near them

at all times, and must always be near their vehicles. For example, both Mr. Williams and Mr. Casey have at least one of these trips during the majority of their workdays.

39.     In a majority of situations, a driver is required to take these unpredictable assignments and can be subject to punishment if he or she refuses to do so. In fact, Universal tells its drivers that they are expected to work for the benefit of Universal from the moment their shift starts to the moment their shift ends.

40.     This expectation is communicated to drivers before they are even hired. In past job postings, Universal noted that drivers must work twelve-hour shifts and that "[y]ou must be available to us during . . . those time frames."

41.     Accordingly, drivers are not free to do as they wish during situations where they have a substantial gap between their last drop off and next pick up. Instead, drivers must receive Universal's permission to use Universal's vehicles for personal purposes; must receive Universal's permission to pick up friends and family members; must remain near their Universal vehicle, Universal phone, and/or Universal tablet; may be called, at any moment, to pick up a client not listed on the daily manifest; must rapidly respond to these requests; may be punished if they do not urgently respond to Universal's requests; and are otherwise bound to their Universal vehicle for the benefit of Universal during their shifts.

42.     After a driver has finished their shift, they either travel to Universal's offices for administrative tasks, such as meeting with management or picking up their manifest for the next day, or they return home. If a driver needs to return to Universal's office for a scheduled meeting with management, the driver is compensated for their travel time from their last drop off to Universal's office and then from Universal's office to the driver's home. If however, the driver returns to the office for work-related reasons that are not meetings with management,

Universal's employee manual dictates that the driver is only compensated for the estimated time it takes for the driver to get from their last drop off to home, regardless of how long it actually takes for the driver to get to Universal's office and then back home.

43.    The FLSA and Ohio law require that employees be compensated for the actual time they work.  Universal's uniform policies of paying drivers based on estimated times, and calculating certain hours worked as unpaid down time or non-compensable on call time, clearly violate both the FLSA and Ohio law.

**UNIVERSAL IS AWARE OF SYSTEMATIC WAGE VIOLATIONS**

44.    Universal is aware of repeated violations of the FLSA and Ohio law and has refused to correct its timekeeping system to appropriately calculate the compensable time of its drivers.  For example, Universal scheduled two meetings on September 13, 2016 with drivers to explain payroll issues.  These meetings, upon information and belief, were scheduled because numerous drivers had complained about their pay being incorrectly calculated.  Ms. Burer led these meetings.

45.    Ms. Burer has also met with individual drivers on multiple occasions to discuss payroll issues.  These meetings have made Ms. Burer aware of repeated violations of the FLSA and Ohio law.

46.    For example, Mr. Williams met with Ms. Burer on September 2, 2016 to discuss errors he identified in his paycheck.  During this meeting, Ms. Burer reviewed one week of Mr. Williams' manifests and/or time sheets, finding numerous instances where Mr. Williams' time was incorrectly classified and calculated.  At this meeting, Ms. Burer admitted that Mr. Williams' hours were incorrectly calculated.

47.     Mr. Williams also met with Ms. Burer on October 25, 2016 to once again discuss errors in his paycheck.  Ms. Burer again reviewed one week of Mr. Williams' manifests and/or time sheets and found numerous instances where Mr. Williams' compensable time was miscalculated.  Ms. Burer ominously suggested to Mr. Williams that this would be the last time they discussed wage issues.

48.     Mr. Casey has also met with Universal employees to discuss improperly calculated time.  For example, Mr. Casey met with a Universal employee twice in 2013 to discuss the fact that Mr. Casey was not being paid for all of the time he worked.  This employee and Mr. Casey reviewed Mr. Casey's manifests and/or time sheets for the relevant time period and concluded that Mr. Casey was not being appropriately compensated for all hours worked.

49.     Mr. Casey also met with Ms. Burer in January and/or February of 2014. During this meeting, Mr. Casey stated that his work hours were not being appropriately calculated and that Universal was not fully compensating him for overtime hours he worked. Ms. Burer agreed.

50.     Although Mr. Williams and Mr. Casey only approached Universal a handful of times to discuss specific issues with their pay, there are numerous occasions where they have been shorted earned compensation.  Mr. Williams and Mr. Casey have feared retaliatory actions if they complain about their wages too often.

51.     While Ms. Burer has admitted to Plaintiffs that Universal's payroll system incorrectly calculates compensable time, Ms. Burer and Universal have not modified or corrected the Universal payroll policy creating these errors.  Universal continues to benefit from these repeated and systematic violations of the FLSA and Ohio law.

## CLASS ACTION ALLEGATIONS

*The Proposed FLSA Collective Action*

52.     Plaintiffs bring this lawsuit as an opt-in collective action under the FLSA. The proposed FLSA collective class ("FLSA Class") consists of all current and former drivers that have worked for Universal within the last three years prior to the filing of this Complaint.

53.     Plaintiffs are similarly situated to members of the FLSA Class.

54.     Universal's drivers, including Plaintiffs, have or had similar job duties and all work or worked in Ohio.  Every driver is or was employed to transport clients to and from specific destinations.

55.     Every driver is or was subject to identical timekeeping and recordkeeping requirements.

56.     Every driver is or was subject to Universal's uniform policies and practices of calculating compensable time.

57.     Every driver is or was subject to Universal's uniform policies and practices of failing to compensate its drivers for all compensable time worked.

58.     These uniform policies and practices deprived Plaintiffs and members of the FLSA Class of minimum wage and overtime pay.

59.     Any defenses Universal may bring against Plaintiffs and members of the FLSA Class are common to all members of the class.  Should any individualized defenses exist, these defenses are minor when compared to the overall issues brought forward in this litigation.

60.      Allowing members of the FLSA Class to assert claims in this litigation is fair to Plaintiffs, Universal, and this Court.  Allowing members of the FLSA Class to assert claims in

this litigation will reduce costs and allow for the resolution of multiple cases, common questions, and a common illegal scheme in one proceeding.

61.     Allowing members of the FLSA Class to assert claims in this litigation also ensures that these FLSA Class members have their day in court.  While an individual driver may not have the means or ability to file an individual action against Universal, this collective action affords all former and current drivers the ability to prosecute their claims in a collective action.

62.     The identities of Class Members are easily identifiable from Universal's payroll records.  *See* O.R.C. § 4111.08 (requiring employers to keep records of employees' name, occupation, address, and other relevant information for three years); O.R.C. § 4111.14(G) (employer must provide employees and their representatives access to certain records); Ohio Const. Art. III, § 34a (same).

63.     Finally, this FLSA Class unquestionably complies with Congressional intent to consolidate many small, related employee FLSA claims into one lawsuit.

### *The Proposed Ohio Class Action*

64.     Plaintiffs also bring this action as an opt-out class action under Fed. R. Civ. P. 23 to remedy violations of Ohio state law.  The proposed Rule 23 Class ("Rule 23 Class") consists of all current and former drivers that have worked for Universal within the last six years prior to the filing of this Complaint.

65.     The Rule 23 Class is so numerous that joinder of all members of the class is impractical.  Universal currently employs approximately 250 drivers.  There may be many more drivers who were employed by Universal within the last six years and were subject to the same uniform policies and procedures, but who no longer work for the company.  Joining each of these individuals would be impractical here.

66.     Common questions of both law and fact exist as to all members of the class, including Plaintiffs.  These common questions predominate over any questions affecting individual members of the class.  For example, some common questions of law and fact are:

A.     Whether Universal has engaged in a pattern and/or practice of calculating its drivers' work hours based on estimated times, rather than the actual times worked;

B.     Whether Universal has engaged in a pattern and/or practice of systematically calculating certain time as "down time" – and thereby non-compensable time – despite the fact that drivers actually worked during this time period;

C.     Whether Universal has engaged in a pattern and/or practice of refusing to compensate its drivers for compensable "on call" time;

D.     Whether Universal has engaged in a pattern and/or practice of failing to compensate its drivers at minimum wage for all hours worked;

E.     Whether Universal has engaged in a pattern and/or practice of failing to compensate its drivers for all hours worked at the hourly rate at which the drivers agreed to work;

F.     Whether Universal has engaged in a pattern and/or practice of failing to compensate its drivers at a rate of one and one half times their hourly rate for all hours worked in excess of 40 hours in a work week;

G.     Whether Universal has willfully failed to pay its drivers for the work Universal required them to perform; and,

H.     The nature and extent of class-wide injury and the measure of damages for that injury.

Answers to these common questions will resolve both Plaintiffs' and the Rule 23 Class Members' lawsuits.

67.     Plaintiffs' claims are typical, if not identical, to the claims of the Rule 23 Class Members.

68.     Universal's drivers, including Plaintiffs, have or had similar job duties and all work or worked in Ohio.  Every driver is or was employed to transport clients to and from specific destinations.

69.     Every driver is or was subject to identical timekeeping and recordkeeping requirements.

70.     Every driver is or was subject to Universal's uniform policies and practices of calculating compensable time.

71.     Every driver is or was subject to Universal's uniform policies and practices of failing to compensate its drivers for all compensable time worked.

72.     Accordingly, the adjudication of Plaintiffs' claims and the claims of the Rule 23 Class will require a determination of whether Universal's uniform policies and practices of calculating and compensating for time worked violated Ohio law.  Therefore, Plaintiffs' interests are directly aligned with the interests of the Rule 23 Class Members.

73.      The named Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class Members.  The named Plaintiffs envision no difficulty in the management of this action as a class action.   The named Plaintiffs have also retained Counsel competent and

experienced in class action litigation, including class action litigation related to wage and hour issues.

74.     Class action treatment here is superior to other alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail.

75.     This is particularly true here because of the presence of the FLSA Class Members.  The facts and materials relevant to the adjudication of the FLSA claims are relevant to the adjudication of the state law claims.  For example, Ohio's minimum wage and overtime laws largely mimic federal law.  *See e.g.*, O.R.C. § 4111.03(A) (overtime should be calculated "in the manner and methods provided in and subject to the exemptions of [the FLSA].").  Accordingly, this Court's evaluation of FLSA requirements is highly relevant to the state law claims of the Rule 23 Class Members.

76.     Furthermore, the amounts at stake for many Class Members, while substantial, may not enable them to maintain separate lawsuits against Universal.  Utilizing the class action mechanism allows these Class Members to have their day in court.

77.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternatives exist for the fair and efficient adjudication of the controversy.

78.     The identities of Class Members are easily identifiable from Universal's payroll records.  *See* O.R.C. § 4111.08 (requiring employers to keep records of employees' name, occupation, address, and other relevant information); O.R.C. § 4111.14(G) (employer

must provide employees and their representatives access to certain records); Ohio Const. Art III, § 34a (same).

79. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Universal.

80. Without a class action, Universal will likely retain the benefits of their wrongdoing and will continue a course of action which will further damage its drivers.

**FIRST CAUSE OF ACTION**

FAILURE TO PAY MINIMUM WAGES
IN VIOLATION OF THE FLSA, 29 U.S.C. § 206, ET SEQ.

81. Plaintiffs and the FLSA Class Members reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

82. Plaintiffs and the FLSA Class Members are and were, at all relevant times, "employees" as defined by the FLSA.

83. Universal is and was, at all relevant times, an "employer" as defined by the FLSA.

84. Plaintiffs and the FLSA Class Members are all current and/or former drivers for Universal.

85. During the course of their employment, Universal failed to appropriately calculate the compensable time worked by Plaintiffs and members of the FLSA Class.

86. For example, Universal paid Plaintiffs and the FLSA Class Members based on the estimated time they worked rather than the actual time they worked. This contradicts the FLSA, which requires an employee to be compensated for the actual time they worked.

87.     Similarly, Universal incorrectly classified certain time worked by Plaintiffs and the FLSA Class Members as down time and did not compensate them for this purported down time.  This also contradicts the FLSA, which requires an employee to be compensated for all time worked.

88.     Moreover, Universal failed to calculate and compensate Plaintiffs and the FLSA Class Members for on call time. This also contradicts the FLSA, which requires an employee to be compensated for all time worked.

89.     Due to its failure to appropriately calculate actual hours worked during a workweek and compensate Plaintiffs and members of the FLSA Class therefore, Universal violated 29 U.S.C. § 206 by paying Plaintiffs and members of the FLSA Class less than the federal minimum wage.

90.     Based on the facts noted above, Universal willfully or recklessly violated the FLSA, Plaintiffs' rights, and the rights of the FLSA Class Members.

91.     This is shown specifically, but not exclusively, by the fact that Ms. Burer and other Universal employees failed to ensure that Universal correctly calculated each driver's compensable time despite being aware of multiple instances where drivers were not paid for all of the hours they worked.

92.     As a result of Universal's conduct, Plaintiffs and members of the FLSA Class have suffered economic damages in the form of unpaid minimum wages.

## SECOND CAUSE OF ACTION

FAILURE TO PAY OVERTIME WAGES
IN VIOLATION OF THE FLSA, 29 U.S.C. § 207, ET SEQ.

93.     Plaintiffs and the FLSA Class Members reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

94. Plaintiffs and the FLSA Class Members are and were, at all relevant times, "employees" as defined by the FLSA.

95. Universal is and was, at all relevant times, an "employer" as defined by the FLSA.

96. Plaintiffs and the FLSA Class Members are all current and/or former drivers for Universal.

97. During the course of their employment, Universal failed to appropriately calculate the compensable time worked by Plaintiffs and members of the FLSA class.

98. For example, Universal paid Plaintiffs and the FLSA Class Members based on the estimated time they worked rather than the actual time they worked. This contradicts the FLSA, which requires an employee to be compensated for the actual time they worked.

99. Similarly, Universal incorrectly classified certain time worked by Plaintiffs and the FLSA Class Members as down time and did not compensate them for this purported down time. This also contradicts the FLSA, which requires an employee to be compensated for all time worked.

100. Moreover, Universal failed to calculate and compensate Plaintiffs and the FLSA Class Members for on-call time. This also contradicts the FLSA, which requires an employee to be compensated for all time worked.

101. Due to its failure to appropriately calculate actual hours worked during a workweek, Universal failed to accurately determine the amount of hours Plaintiffs and members of the FLSA Class worked in excess of 40 hours during their work weeks.

102.     Accordingly, in violation of 29 U.S.C. § 207, Universal failed to provide Plaintiffs and members of the FLSA Class overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in their work weeks that exceeded 40 hours.

103.     Based on the facts noted above, Universal willfully or recklessly violated the FLSA, Plaintiffs' rights, and the rights of the FLSA Class Members.

104.     This is shown specifically, but not exclusively, by the fact that Ms. Burer and other Universal employees failed to ensure that Universal correctly calculated each driver's compensable time despite being aware of multiple instances where drivers were not paid for all of the hours they worked.

105.     As a result of Universal's conduct, Plaintiffs and members of the FLSA Class have suffered economic damages in the form of unpaid overtime wages.

**THIRD CAUSE OF ACTION**

FAILURE TO PAY MINIMUM WAGES
IN VIOLATION OF OHIO CONST. ART. II, § 34a.

106.     Plaintiffs and the Rule 23 Class Members reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

107.     Plaintiffs and the Rule 23 Class Members are and were, at all relevant times, "employees" as defined by the Ohio Const. Art. II, § 34a.

108.     Universal is and was, at all relevant times, an "employer" as defined by the Ohio Const. Art. II, § 34a.

109.     Plaintiffs and the Rule 23 Class Members are all current and/or former drivers for Universal.

110.     During the course of their employment, Universal failed to appropriately calculate the compensable time worked by Plaintiffs and members of the Rule 23 Class.

111.    For example, Universal paid Plaintiffs and the Rule 23 Class Members based on the estimated time they worked rather than the actual time they worked. This contradicts Ohio law, which requires an employee to be compensated for the actual time they worked.

112.    Similarly, Universal incorrectly classified certain time worked by Plaintiffs and the Rule 23 Class Members as down time and did not compensate them for this purported down time. This also contradicts Ohio law, which requires an employee to be compensated for all time worked.

113.    Moreover, Universal failed to calculate and compensate Plaintiffs and the Rule 23 Class Members for on call time. This also contradicts Ohio law, which requires an employee to be compensated for all time worked.

114.    Due to its failure to appropriately calculate actual hours worked during a workweek and compensate Plaintiffs and members of the Rule 23 Class therefore, Universal violated Ohio Const. Art. II, § 34a. by paying Plaintiffs and members of the Rule 23 Class less than Ohio's minimum wage.

115.    Based on the facts noted above, Universal willfully or recklessly violated Ohio law, Plaintiffs' rights, and the rights of the Rule 23 Class Members.

116.    This is shown specifically, but not exclusively, by the fact that Ms. Burer and other Universal employees failed to ensure that Universal correctly calculated each driver's compensable time despite being aware of multiple instances where drivers were not paid for all of the hours they worked.

117.    As a result of Universal's conduct, Plaintiffs and members of the Rule 23 Class have suffered economic damages in the form of unpaid minimum wages.

# **FOURTH CAUSE OF ACTION**

## FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION OF O.R.C. §§ 4111.03, 4111.10

118.    Plaintiffs and the Rule 23 Class Members reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

119.    Plaintiffs and the Rule 23 Class Members are and were, at all relevant times, "employees" as defined by the Ohio Revised Code.

120.    Universal is and was, at all relevant times, an "employer" as defined by the Ohio Revised Code.

121.    Plaintiffs and the Rule 23 Class Members are all current and/or former drivers for Universal.

122.    During the course of their employment, Universal failed to appropriately calculate the compensable time worked by Plaintiffs and members of the Rule 23 Class.

123.    For example, Universal paid Plaintiffs and the Rule 23 Class Members based on the estimated time they worked rather than the actual time they worked.  This contradicts Ohio law, which requires an employee to be compensated for the actual time they worked.

124.    Similarly, Universal incorrectly classified certain time worked by Plaintiffs and the Rule 23 Class Members as down time and did not compensate them for this purported down time.  This also contradicts Ohio law, which requires an employee to be compensated for all time worked.

125.    Moreover, Universal failed to calculate and compensate Plaintiffs and the Rule 23 Class Members for on call time. This also contradicts Ohio law, which requires an employee to be compensated for all time worked.

126. Due to its failure to appropriately calculate actual hours worked during a workweek, Universal permitted Plaintiffs and members of the Rule 23 Class to work more than 40 hours during their work weeks.

127. Nonetheless, in violation of O.R.C. §§ 4111.03 and 4111.10, Universal failed to provide Plaintiffs and members of the Rule 23 Class overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in their work weeks that exceeded 40 hours.

128. Based on the facts noted above, Universal willfully or recklessly violated Ohio law, Plaintiffs' rights, and the rights of the Rule 23 Class Members.

129. This is shown specifically, but not exclusively, by the fact that Ms. Burer and other Universal employees failed to ensure that Universal correctly calculated each driver's compensable time despite being aware of multiple instances where drivers were not paid for all of the hours they worked.

130. As a result of Universal's conduct, Plaintiffs and members of the Rule 23 Class have suffered economic damages in the form of unpaid overtime wages.

## FIFTH CAUSE OF ACTION

UNIVERSAL'S PAY PRACTICES VIOLATED THE OHIO
PROMPT PAY ACT, O.R.C. § 4113.15

131. Plaintiffs and members of the Rule 23 Class reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

132. Plaintiffs and members of the Rule 23 Class are all current and/or former drivers for Universal.

133. Universal is and was, at all relevant times a "corporation" doing business in Ohio as defined by the Ohio Revised Code.

134.     Plaintiffs and the Rule 23 Class worked for Universal at an agreed upon hourly rate of compensation.

135.     As previously discussed, Universal failed to appropriately calculate the compensable time worked by Plaintiffs and members of the Rule 23 Class and compensate them for that time.

136.     Accordingly, Universal violated O.R.C. § 4113.15 by failing to pay Plaintiffs and members of the Rule 23 Class (1) on or before the first day of each month for all wages and benefits earned by them during the first half of the preceding month ending with the fifteenth day thereof, and (2) on or before the fifteenth day of each month all wages and benefits they earned during the last half of the preceding calendar month.

137.     Based on the facts above, Universal willfully or recklessly violated Ohio law, Plaintiffs' rights, and the rights of the Rule 23 Class Members.

138.     As a result of Universal's conduct, Plaintiffs and members of the Rule 23 Class have suffered economic damages in the form of unpaid regular and overtime wages and any attendant unpaid benefits to which they would have been entitled had their wages been appropriately calculated.

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT

139.     Plaintiffs and members of the Rule 23 Class reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

140.     Universal offered Plaintiffs and the Rule 23 Class members employment as drivers for an hourly rate of compensation.

141.    Plaintiffs and the Rule 23 Class members accepted their individual offers and agreed to work as drivers for Universal at the agreed upon hourly rate of compensation.

142.    Plaintiffs and the Rule 23 Class members indeed drove for Universal and accordingly worked for pay. Such services were not gratuitously undertaken.

143.    During the course of their employment, Universal failed to appropriately calculate the hours worked by Plaintiffs and members of the Rule 23 Class.

144.    Due to its failure to appropriately calculate actual hours worked and compensate Plaintiffs and members of the Rule 23 Class, Universal breached its contracts with Plaintiffs and members of the Rule 23 Class by failing to pay their agreed upon hourly wages.

145.    As a result of Universal's breach, Plaintiffs and the Class Members have suffered damages in the form of unpaid contractual wages.

## SEVENTH CAUSE OF ACTION

### UNIVERSAL WAS UNJUSTLY ENRICHED

146.    Plaintiffs and members of the Rule 23 Class reassert all of the foregoing allegations as if fully rewritten herein and further allege as follows.

147.    Plaintiffs and members of the Rule 23 Class conferred benefits upon Universal by working for and transporting clients on behalf of Universal.

148.    Universal is and was aware of the benefits Plaintiffs and the Rule 23 Class members conferred upon Universal.

149.    Accordingly, Plaintiffs and the Rule 23 Class members were entitled to their agreed upon wages and benefits for their services.

150.    Nonetheless, Universal wrongfully and intentionally withheld these wages and benefits from Plaintiffs and members of the Rule 23 Class.

151.     As a result of Universal's conduct, Universal has been unjustly enriched, and Plaintiffs and Rule 23 Class members have suffered damages in the form of unpaid wages and benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of both the FLSA and Rule 23 Classes, request this Court grant the following relief against Defendant:

a.     Designation of this action as a collective action on behalf of the FLSA Class, prompt issuance of notice pursuant to 29 U.S.C. § 216(b) apprising all members of the FLSA Class of the pendency of this action and their right to "opt-in," and permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b);

b.     Designation of Plaintiffs Edward Williams and Anthony Casey as Representatives of the FLSA Class;

c.     Designation of undersigned counsel as FLSA Class counsel;

d.     An order declaring Defendant's FLSA violations were willful;

e.     On the Ohio Causes of Action, designation of this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and prompt issuance of notice pursuant to Fed. R. Civ. P. 23(c)(2) apprising all members of the Rule 23 Class of the pendency of this action and permitting them to assert their state law claims in a timely manner;

f.     Designation of Plaintiffs Edward Williams and Anthony Casey as Representatives of the Rule 23 Class;

g.	Designation of undersigned counsel as Rule 23 Class counsel;

h.	An injunction prohibiting Universal from engaging in future wage and hour violations;

i.	All monetary relief available as a result of Universal's FLSA violations;

j.	All monetary relief available as a result of Universal's violations of Ohio law;

k.	Attorneys' fees, expenses, and costs in this action; and,

l.	Such further relief as this Court deems just and proper.

Respectfully Submitted,

/s/ *Melanie S. Bailey*
Melanie S. Bailey (0075821)
Janet G. Abaray (0002943)
David C. Harman (0087882)
Justin J. Joyce (0090683)
**BURG SIMPSON**
**ELDREDGE HERSH, & JARDINE, P.C.**
312 Walnut Street, Suite 2090
Cincinnati, Ohio 45202
Phone: (513) 852-5600
Fax: (513) 852-5611
Email: mbailey@burgsimpson.com
Email: jabaray@burgsimpson.com
Email: dharman@burgsimpson.com
Email: jjoyce@burgsimpson.com

## JURY DEMAND

Plaintiffs hereby demand trial by jury.

/s/ *Melanie S. Bailey*
Melanie S. Bailey